

FILED
at 9 O'clock & 58 min A M
Date 3-6-06
CLERK
United States Bankruptcy Court
Savannah, Georgia

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | CASE NO. 05-51909-JDW |
| RICHARD N. CARVER, JR. and | ) | |
| ASHLEY D. CARVER, | ) | |
| | ) | |
| DEBTORS. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Debtors:        Clyde W. Royals
                    612 Tebeau Street
                    Waycross, Georgia 31501

For HSBC Auto Finance:   Stephen H. Block
                         2270 Resurgens Plaza
                         945 East Paces Ferry Road
                         Atlanta, Georgia 30326

## MEMORANDUM OPINION

This matter comes before the Court on HSBC Auto Finance's objection to plan confirmation. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtors Richard and Ashley Carver filed a joint Chapter 13 petition on December 5, 2005. On Schedule B, Debtors listed a 2004 PT Cruiser with a current value of $14,500. On Schedule D, they listed HSBC Auto Finance as a creditor with a total claim of $15,000. Of that, $14,500 was listed as secured by the PT Cruiser and $500 was listed as unsecured. In their Chapter 13 plan, Debtors listed HSBC as having a fully secured allowed claim for $15,000 and proposed to pay it in monthly installments of $250 without interest.

Debtors have not disputed that they purchased the PT Cruiser during the 910-day period prior to filing their petition and that they purchased it for personal use. On January 18, 2006, HSBC filed an objection to confirmation of the plan, arguing that it is entitled to receive 12 percent interest on its claim. The Court held a hearing on the issue on January 24, 2006, and for the following reasons, sustains the objection.

### Conclusions of Law

At issue in this case is whether a debtor must pay interest to a creditor whose collateral is a motor vehicle purchased by the debtor for personal use within 910 days prior

2

to filing a bankruptcy petition. The question turns on the interpretation of a new provision of 11 U.S.C. § 1325(a), which was added as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Congress inserted the language as an unnumbered paragraph following § 1325(a)(9) (the "hanging paragraph"), providing as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a), hanging paragraph.

The reader immediately notices two problems. First, the provision "has no alphanumeric designation and merely dangles at the end of § 1325(a). There is no way to cite to this provision other than its proximity to other citable provisions." Dianne C. Kerns, Cram-a-lot: The Quest Continues, 24-Nov. Am. Bankr. Inst. J. 10, 10 (2005). In addition, the provision is "missing an operable word. The first sentence refers to 'the 910-day [period] preceding the date of the filing of the petition ....'" Id. Without the addition of "period," the provision makes little sense and could be read to apply only to debts of the type described that were incurred exactly 910 days–no more, no less–prior to the petition date.[1] These two problems are mere shadows of the larger interpretation difficulties this

---

[1] Statutory language without a "plausible purpose ... may represent a scrivener's error that [the Court] may properly correct." Holloway v. U.S., 526 U.S. 1, 19 n.2, 119 S.

3

provision presents.

## Status of 910 Claims

When interpreting a statute, the Court must begin with the cardinal rule of construction: "It is well established that 'when the statute's language is plain, the sole function of the courts–at least where the disposition required by the text is not absurd–is to enforce it according to its terms.'" Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6, 120 S. Ct. 1942, 1947 (2000)). Furthermore, the fact that a statute is awkward or ungrammatical does not necessarily render it ambiguous and incapable of a plain-language interpretation. Id.

In this case, the hanging paragraph sets forth particular treatment for creditors with certain types of claims (hereinafter, "910 claims"). The questionable language is as follows: "For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph" if it is a 910 claim. Paragraph (5) describes the required treatment of secured claims in a Chapter 13 plan. The plain language of the hanging paragraph simply states that § 506 does not apply to 910 claims when determining the treatment of secured claims.

Section 506 provides in relevant part as follows:

> An allowed claim of a creditor secured by a lien on property
> in which the estate has an interest, or that is subject to setoff
> under section 553 of this title, is a secured claim to the extent

---

Ct. 966, 975 n.2 (1999) (Scalia, J., dissenting). The Court finds no plausible purpose for the omission of the word "period" from the text. As noted, its omission renders the provision virtually meaningless. Therefore, the Court will correct the provision to read "910-day period" (just as it actually reads "1-year period" when referring to non-automotive collateral later in the same sentence) for purposes of this Opinion.

4

> of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). The meaning of this section is not in dispute. It bifurcates claims into secured and unsecured portions, such that a claim is only secured to the extent of the value of the collateral. Without application of § 506(a), a claim is merely an allowed claim; it cannot be a secured claim. With that understanding of § 506, the hanging paragraph must be read to provide that for purposes of § 1325(a)(5), a 910 claim is not a secured claim and therefore not subject to the treatment provided in that paragraph.

There is seldom enough money in a bankruptcy estate to pay the claims of all creditors in full. A decision to pay more money to one creditor necessarily results in a reduced payment to another creditor. Historically, Congress has provided a carefully considered framework to direct courts in making these allocations. In order to change these allocations by amendment to the Bankruptcy Code, Congress must address the method as well as the result.

The method established by Congress for creating a "secured claim" has been and continues to be found in § 506(a) of the Code. While it is the prerogative of Congress to establish certain types of claims as "secured claims" apart from § 506(a), such a provision must specify that result clearly. Such an intention cannot be inferred by the instruction of the hanging paragraph that "section 506 should not apply" to certain kinds of claims. If such a claim is to be treated as a "secured claim" like other "secured claims," established by § 506(a), it must somehow be so identified.

5

Creditors' brief urges that a claim secured by collateral is inherently a "secured claim." That might be true in a conversational vocabulary, but in the precise terminology of the Bankruptcy Code where allocating money depends on the classification of the claim, the conversational terminology is useless.

The Court is aware of only three cases that have analyzed the hanging paragraph. Like the creditor in this case, the courts have assumed that the 910 claim is fully secured, without offering any rationale for that assumption. In In re Johnson, No. 05-14449, 2006 WL 270231 (Bankr. M.D.N.C. Feb. 2, 2006), the debtors owed $12,482.83 at a contract rate of 14.5 percent on a vehicle worth $9,967 that they had purchased for personal use within 910 days prior to filing for bankruptcy. The debtors proposed to cram down the claim, and the creditor objected. Id. at *1. In response to the debtors' argument that the hanging paragraph "turns a secured claim into an unsecured claim," the court responded that it

> simply provides that debtors may not bifurcate the claims of lenders with purchase money security interests in vehicles purchased within 910 days of bankruptcy for the debtor's personal use. Such a creditor is <u>entitled to the full payment of his contractual claim</u> or to the return of the vehicle.

Id. at *3 (emphasis added).

The debtor in In re Robinson, No. 05-71899, 2006 WL 349801 (Bankr. W.D. Mo. Feb. 10, 2006), owned two vehicles subject to 910 claims, one oversecured and one undersecured. At issue in that case was the interest rate proposed under the plan. Id. at *1. However, before addressing that issue, the court stated that because § 506 does not apply to the two 910 claims, "<u>these creditors are entitled to secured claims for the total amount of their claims</u>, regardless of the value of the respective vehicles, and the Debtor cannot

6

bifurcate them." Id. at *3 (emphasis added). The Robinson court offers no analysis for the recognition of the claim as a secured claim.

The third case, In re Horn, No. 05-34246-DHW, 2006 WL 416314 (Bankr. M.D. Ala. Feb. 23, 2006), raised the issue of whether the creditor held a purchase money security interest such that it could proceed under the hanging paragraph. Id. at *1. In the course of its discussion, the court–like Johnson and Robinson–suggested that § 506 is not necessary to establish a secured claim; it merely detaches the unsecured portion of the claim. Id. at *2. The court stated, "If § 506 does not apply, the creditor's claim must be treated under the plan as fully secured." Id. The conclusion is not supported by any provision of the Code.

This Court disagrees with the assumption in Johnson, Robinson, and Horn that claims secured by collateral become "secured claims" for purposes of distribution in Chapter 13 cases. As the Court explained earlier, nothing in the text of the hanging paragraph suggests that Congress intended 910 claims to be treated as secured claims. The only generally applicable definition of a secured claim comes from § 506. By rendering that section inapplicable to 910 claims, Congress expressly eliminated the mechanism by which they could be treated as secured under the Chapter 13 plan.

Rather than amending § 1325(a), Congress could have amended § 506 so that the value of the collateral underlying a 910 claim would equal the full amount of the claim. It did not do so. In fact, earlier versions of the bankruptcy reform legislation offered such an amendment. The 1997 version added a single sentence to § 506: "Subsection (a) [of § 506] shall not apply to an allowed claim to the extent attributable in whole or in part to the purchase price of personal property acquired by the debtor during the 90-day period

7

preceding the date of the filing of the petition." Consumer Bankruptcy Reform Act of 1997, S. 1301, 105th Cong. § 302(c) (1997). The bill also included a "hanging" provision to be inserted at the end of § 1325(a), as follows: "For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph." Id. § 302(a). The 1998 and 1999 versions of the bill eliminated the hanging provision and offered expanded amendments to § 506 that required certain collateral to be valued as the balance due on the debt.[2] Bankruptcy

---

[2] The proposed amendments in 1998 and 1999 to § 506 included the addition of a subsection (e) providing as follows:
> (e) In an individual case under chapter 7, 11, 12, or 13–
> (1) subsection (a) shall not apply to an allowed claim to the extent attributable in whole or in part to the purchase price of personal property acquired by the debtor within 180 days [5 years in the 1999 version] of the filing of the petition, except for the purpose of applying paragraph (3) of this subsection;
> (2) if such allowed claim attributable to the purchase price is secured only by the personal property so acquired, <u>the value of the personal property and the amount of the allowed secured claim shall be the sum of the unpaid principal balance of the purchase price and accrued and unpaid interest and charges at the contract rate</u>;
> (3) if such allowed claim attributable to the purchase price is secured by the personal property so acquired and other property, the value of the security may be determined under subsection (a), but the value of the security and the amount of the allowed secured claim shall be not less than the unpaid principal balance of the purchase price of the personal property acquired and unpaid interest and charges at the contract rate; and
> (4) in any subsequent case under this title that is filed by or against the debtor in the 2-year period beginning on the date the petition is filed in the original case, the value of the personal property and the amount of the allowed secured claim shall be deemed to be not less than the amount provided under subparagraphs (2) and (3).

Bankruptcy Reform Act of 1998, H.R. 3150, 105th Cong. § 128 (1998); Bankruptcy Reform Act of 1999, H.R. 833, 106th Cong. § 122 (1999) (emphasis added).

8

Reform Act of 1998, H.R. 3150, 105th Cong. § 128 (1998); Bankruptcy Reform Act of 1999, H.R. 833, 106th Cong. § 122 (1999).

In bankruptcy reform amendments offered in 2000 and 2001, the changes to § 506 were eliminated, and the hanging provision morphed into its present form, except that the 910-day period was a 5-year period in the 2000 version and a 3-year period in the 2001 version. Bankruptcy Reform Act of 2000, S. 3186, 106th Cong. § 306(b) (2000); Bankruptcy Reform Act of 2001, H.R. 333, 107th Cong. § 306(b) (2001).

Applying the analysis provided by the Supreme Court in an earlier case, "[t]he fact that Congress considered but rejected legislation" that would have given 910 claim fully secured status supports the conclusion that it did not intend 910 claims to be treated as secured claims under a Chapter 13 plan. See Till v. SCS Credit Corp., 541 U.S. 465, 480 n.19, 124 S. Ct. 1951, 1962 n.19 (2004).

Of course, Congress may designate a claim as secured without using § 506. For example, under § 1111(b), the holder of a "claim secured by a lien on property of the estate" with or without recourse against the debtor may elect that "notwithstanding section 506(a) of [title 11], such claim is a secured claim to the extent that such claim is allowed." 11 U.S.C. § 1111(b)(1)(A), (2). However, the hanging paragraph in § 1325(a) makes no similar express statement that 910 claims should be considered secured after it states § 506 does not apply.

The Court is persuaded that the text of the statute plainly prevents 910 claims from being treated as secured under a Chapter 13 plan. As a leading bankruptcy authority explained,

9

> This new language states that for purposes of section 1325(a)(5), section 506 shall not apply to certain claims. Such claims, therefore, cannot be determined to be allowed secured claims under section 506(a) and are not within the ambit of section 1325(a).
>
> ...
>
> It is possible that this language was intended to prohibit the use of section 506(a) to bifurcate a secured claim into an allowed secured claim and an allowed unsecured claim as part of the cramdown permitted by section 1325(a)(5)(B) and, therefore, that such claims should be treated as fully secured claims regardless of the value of the collateral. But, even if that was the intent, because the new language added to section 1325(a) renders entirely inapplicable for some creditors the only section, section 506(a), that gives those creditors allowed secured claims, it does not [sic] to carry out such intent.

8 Collier on Bankruptcy ¶ 1325.06[1][a] (15th ed. rev'd 2006).

### Treatment of 910 Claims

Having determined that 910 claims are not secured claims for purposes of § 1325(a)(5), and are not entitled to treatment under that section, the Court must consider how such claims should be paid under the plan. The creditors would prefer that they be paid in full with interest, but the Court can find no basis for such an allocation. In fact, nothing in the statute offers guidance for the payment of 910 claims, so the Court is left to extrapolate congressional intent from the information it does have.

Possibly, Congress intended the 910 claim to be treated as wholly unsecured, but it is unlikely that Congress singled out the creditor with a 910 claim in order to punish it. More likely is that Congress intended to treat such claims better than they would have been treated under former law. Congress is free to give certain creditors preferential treatment, even if doing so seems unfair to other creditors. For example, § 524(m)(1) provides for a presumption that a reaffirmation agreement creates an undue hardship in certain

10

circumstances. 11 U.S.C. § 524(m)(1). Section 524(m)(2), however, provides that the assumption does not apply if the creditor is a credit union. Id. § 524(m)(2). The Court is required to accept that a credit union gets better treatment than another entity that might look like a credit union in every way–such as a bank–but, it is Congress's prerogative to offer such special treatment, and courts are not invited to undo it. In fact, if Congress intended 910 claims to receive better treatment than they received under prior law, Congress must necessarily have intended that general unsecured creditors bear the harm of that decision. The increased distribution paid to a 910 claim draws from and thus reduces the amount available for general unsecured creditors.[3]

By creating a special provision solely for 910 claims, Congress has demonstrated an intent to treat them differently than other unsecured or secured claims, but it has not provided a basis for treating them preferentially. In particular, as the Court has explained, there is no basis for concluding that Congress intended to treat them the same as fully secured claims under § 506. The Court is left with a claim that is not to be treated as unsecured (pro rata distribution) and not to be treated as secured (paid in full with interest). So, how is such a claim to be paid? In the face of congressional silence on the question, the Court seeks to craft a rule consistent with the Court's understanding of congressional intent on this issue.

Section 1111(b) may provide a useful starting point for developing such a rule. Under § 1111(b), as described above, any secured creditor can elect to be paid in full with

---

[3] Of course, general unsecured creditors would suffer no harm if the plan were to propose a 0% distribution even in the absence of 910 claims.

11

no interest or can elect bifurcation, receiving a secured claim paid in full with interest and an unsecured claim to be paid pro rata. A creditor will not necessarily elect the treatment that pays the most money. For example, the creditor may seek a strategic advantage by holding an unsecured claim large enough to allow it to defeat the Chapter 11 plan. No such advantage is available in Chapter 13. So, if Congress offered the 910 claim holder such an election, it likely would always select the option with the greatest distribution, which should be acknowledged by any rule created by the Court.

Using § 1111(b) as a guide, with the understanding that Congress did not intend to use the hanging paragraph to punish 910 claim holders, the Court concludes as follows: In a Chapter 13 plan, a 910 claim must receive the <u>greater</u> of (1) the full amount of the claim without interest[4]; or (2) the amount the creditor would receive if the claim were bifurcated and crammed down (i.e., secured portion paid with interest and unsecured portion paid pro rata).[5]

The Court recognizes that this rule is awkward and cumbersome, but it has been fashioned to ensure that 910 claims are not punished under the new law. Of course, nothing

---

[4] Because the hanging paragraph only makes § 506 inapplicable for purposes of § 1325(a)(5), the 910 claim may become secured for other purposes. Congress has authorized modification of secured claims under § 1322(b). <u>See</u> 8 Collier on Bankruptcy ¶ 1325.06[1][a] (15th ed. rev'd 2006). Thus, the elimination of interest is consistent with existing law.

[5] Although the rule seeks to prevent harm with respect to the total amount paid on an 910 claim, such claims still suffer some disadvantage under the new law. Pursuant to § 1325(a)(5)(B)(iii)(II), which was added by BAPCPA, plan payments made to a secured creditor "shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan." Because § 1325(a)(5) does not apply to 910 claims, they cannot require this adequate protection benefit.

Case:05-51909-JSD    Doc#:25    Filed:03/06/06    Entered:03/08/06 12:31:32    Page:13 of 16

prevents a debtor from proposing better treatment for a creditor with a 910 claim than required by the rule, just as nothing prevents such a creditor from accepting less than the rule requires. Bankruptcy practitioners should not lose sight of the fact that the process of plan confirmation involves give and take among debtors and creditors. In a case such as this, for example, the creditor likely would receive several thousand dollars more with cram down treatment due to payment of interest even if it received no distributions on its de minimus unsecured claim. Still, the debtor retains some leverage, such as his ability to surrender the collateral–especially when its value is substantially less than the claim. If nothing else, these circumstances offer creditors an opportunity to negotiate a payment accommodation that transcends any particular case and is reflected in the overall relationship between debtors and creditors.

Before concluding, it is worth mentioning that this rule may open the door to questions regarding the valuation of collateral on 910 claims because such value is necessary to make the calculation required by the rule. The debtor can set a value in his schedules and in the Chapter 13 plan. However, that will not necessarily end the inquiry. Creditors also are free to indicate a value on their proof of claim forms. If the debtor's plan is silent as to valuation, there is no reason the Court cannot rely on the proof of claim if it is fully completed.

In this case, Debtors proposed to pay HBSC's claim in full without interest. The total amount of the claim is approximately $15,000. Debtors assigned a value of $14,500 to the collateral. Consequently, if the claim were bifurcated and crammed down, HBSC would receive interest on $14,500, which would generate a total payout exceeding $15,000. For

that reason, HBSC is not sufficiently provided for by the plan, and its objection will be sustained.

An Order in accordance with this Opinion will be entered on this date.

Dated this 6th day of March, 2006.

_____
James D. Walker, Jr.
United States Bankruptcy Judge

CERTIFICATE OF SERVICE

I, Cheryl L. Spilman, certify that the attached and foregoing have been served on the following:

>Clyde W. Royals
>612 Tebeau Street
>Waycross, Georgia 31501
>
>Stephen H. Block
>2270 Resurgens Plaza
>945 East Paces Ferry Road
>Atlanta, Georgia 30326
>
>M. Elaina Massey
>Post Office Box 1717
>Brunswick, Georgia 31521

This 6th day of March, 2006.

Cheryl L. Spilman
Deputy Clerk
United States Bankruptcy Court

CERTIFICATE OF SERVICE

    I, Cheryl L. Spilman, certify that the attached and foregoing have been served on the following:

>Clyde W. Royals
>612 Tebeau Street
>Waycross, Georgia 31501
>
>Stephen H. Block
>2270 Resurgens Plaza
>945 East Paces Ferry Road
>Atlanta, Georgia 30326
>
>M. Elaina Massey
>Post Office Box 1717
>Brunswick, Georgia 31521

This 6th day of March, 2006.

_Cheryl L. Spilman_
Cheryl L. Spilman
Deputy Clerk
United States Bankruptcy Court